1999 Utah Ct. App. 336

**Darlene COLLINS, as guardian of Vickie L. Collins, an incompetent person, Plaintiff and Appellant,**

v.

**UTAH STATE DEVELOPMENTAL CENTER, Utah State Department of Human Services, and the State of Utah, Defendants and Appellees.**

**No. 981511–CA.**

Court of Appeals of Utah.

Nov. 18, 1999.

---

Brian S. King and Richard R. Burke, King & Isaacson, Salt Lake City, for Appellant.

Jan Graham, Atty. Gen., and Nancy L. Kemp, Asst. Atty. Gen., Salt Lake City, for Appellees.

Before BENCH, JACKSON, and ORME, JJ.

## OPINION

BENCH, Judge:

¶ 1 Darlene Collins, mother of Vickie Collins, appeals the trial court's directed verdict in favor of the Utah State Developmental Center (Center), which was based on her failure to present competent expert testimony in support of her negligence action against the Center. We reverse.

## BACKGROUND

¶ 2 The underlying facts in this case are undisputed. When the events forming the basis of this lawsuit took place, Vickie Collins was a forty-year-old resident of the Center, an intermediate care facility for the mentally retarded. Throughout her life, Collins has suffered from severe mental retardation, multiple types of seizures, and schizophrenia. The Center had a limited guardianship over Collins to provide for her care. Decisions about her care were made by a team of professionals, including a qualified mental retardation professional, a social worker, a nurse, a recreational therapist, and direct care staff. Each year, the treatment team developed an Individual Habitation Plan (IHP) for Collins, which provided specific treatment objectives and plans for her medical, recreational, social, dietary, and other needs.

¶ 3 Collins's seizure activity increased significantly in 1993, which was noted in her IHP. The Center did not thereafter reevaluate Collins's recreational activities, but did place her in a protective helmet. On March 9, 1994, while wearing her helmet, Collins joined seven other residents outside to play under the supervision of two staff members. She immediately went to the swings and began swinging. A staff member was within ten to fifteen feet of Collins when she fell from the swing and was seriously injured. She is now a paraplegic.

¶ 4 Collins, through her mother, filed this negligence action against the Center under the Utah Health Care Malpractice Act, presumably because the Center is a health care provider covered by the Act. *See* Utah Code Ann. § 78–14–3(11) (Supp.1999). The Center filed a motion in limine seeking to exclude the testimony of Collins's designated expert witness, Dr. Lewis Mustard, who was prepared to testify regarding the standard of care owed to Collins and a breach of that standard by the Center. Dr. Mustard holds

a Ph.D. in Health Administration, has taught numerous courses and seminars in health care management and administration, and has twenty-five years of experience in hospital administration. At trial, the court preliminarily sustained the Center's objection to Dr. Mustard's proposed testimony, but agreed to give Collins further opportunity to qualify Dr. Mustard as an expert later in the day. Collins's later attempt to qualify Dr. Mustard was unsuccessful. At the close of Collins's case-in-chief, the Center moved for a directed verdict arguing that, given the absence of expert testimony, Collins did not establish the applicable standard of care and a breach thereof. The court agreed, concluding that the case required expert testimony, and granted the Center's motion for a directed verdict. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶ 5 The sole issue presented in this appeal is whether the trial court properly granted a directed verdict in favor of the Center. In reviewing a directed verdict, " '[w]e must examine the evidence in the light most favorable to the losing party, and if there is a reasonable basis in the evidence and in the inferences to be drawn therefrom that would support a judgment in favor of the losing party, the directed verdict cannot be sustained.' " *Virginia S. v. Salt Lake Care Ctr.*, 741 P.2d 969, 971 (Utah Ct.App. 1987) (quoting *Management Comm. of Graystone Pines Homeowners Ass'n v. Graystone Pines, Inc.*, 652 P.2d 896, 898 (Utah 1982)). A directed verdict is only "appropriate if, on uncontested facts and under the applicable law, one party is entitled to judgment." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 57 (Utah 1991).

## ANALYSIS

■ ¶ 6 Collins first argues that the trial court erred in granting a directed verdict because the standard of care in this action could be readily understood by lay jurors, thereby eliminating the need for expert testimony. We agree.

¶ 7 "In medical malpractice cases, expert testimony is generally required to establish the standard of care 'because the nature of the profession removes the particularities of its practice from the knowledge and understanding of the average citizen.' " *Virginia S.*, 741 P.2d at 971 (quoting *Nixdorf v. Hicken*, 612 P.2d 348, 352 (Utah 1980)). However, "expert testimony is unnecessary to establish the standard of care owed the plaintiff where the propriety of the treatment received is within the common knowledge and experience of the layman." *Nixdorf*, 612 P.2d at 352.

¶ 8 This case falls within the *Nixdorf* "common-knowledge" exception because "there are no medical technicalities involved that call for expert testimony to determine whether the [Center] breached its standard of care." *Virginia S.*, 741 P.2d at 972. *Virginia S.* involved the rape of a seventeen-year-old girl, incapable of consenting to sex, while under the care and custody of the Salt Lake Care Center. *See id.* at 970. She suffered from neuro-degenerative disease, severe mental retardation, progressive dementia, seizures, muscle weakness, and failing eyesight and hearing. *See id.* This court concluded that expert testimony was unnecessary because the standard of care owed to Virginia S. to protect her from rape falls within the common-knowledge exception. *See id.* at 972. Likewise, a lay juror can readily evaluate the alleged negligence by the Center in failing to protect Collins from a swing injury.

¶ 9 Collins does not dispute that the Center's formulation of her IHP, including recommendations for recreational activities, was special in nature and may have required expert testimony to determine the standard of care owed to her in making those recommendations. But the formulation of the IHP is not at issue here. Collins also does not argue that the Center was negligent in allowing her to swing. Rather, Collins simply contends that the Center was negligent in failing to take the necessary safety precautions for this very common recreational activity. Although Collins filed her claim under the Malpractice Act, it is clear from the following relevant allegations in Collins's original complaint that her case was one of simple negligence:

14. The defendants' employees were negligent in placing [Collins] on a swing which did not contain adequate safety devices to keep [Collins] from falling from it. The employees were aware of [Collins's] mental and physical limitations and knew of the seizures she has suffered from in the recent past yet the defendants' employees failed to take proper precautions to ensure [Collins's] safety.

15. The defendants' employees were negligent in failing to utilize the swings available at the Developmental Center specifically made to provide adequate support to handicapped individuals.

16. The defendants' employees were negligent in failing to adequately supervise [Collins] as she was swinging on or about March 9, 1994.

17. The defendants were negligent in failing to adequately staff the facility to provide adequate supervision of [Collins] and in failing to train employees on how to care for [Collins].

*See Moore v. Louis Smith Mem'l Hosp., Inc.,* 216 Ga.App. 299, 454 S.E.2d 190, 192 (1995) (providing that court must look to substance of action against health care facility to determine whether action is for professional or simple negligence). The plaintiff in *Moore* was injured when a nursing assistant moved her from a wheelchair to a bed, and her foot became caught in the bed rail. *See id.* at 191. The court found that the injury involved simple negligence, "rather than an act requiring the exercise of expert medical judgment." *Id.* at 192. The decision regarding when and how a patient should be transported may require expert medical judgment. However, the actual "'safe movement of [plaintiff] from the [wheelchair to the bed] was merely an act of relative physical strength and dexterity.'" *Id.* (citation omitted, alterations in original).

¶ 10 Likewise, Collins's action against the Center did not call into question "'the conduct of a professional in his area of expertise.'" *Id.* (citation omitted). The record does not show, and the Center does not suggest, that the implementation of the decision to allow Collins to swing had "to be performed by a person with medical training or that it involved the exercise of medical judgment or required medical expertise." *Id.* Most jurors could easily ascertain the standard of care owed to a three-year-old when supervising her on a swing. Similarly, they would understand the standard of care owed to a person with Collins's capacities. Simply put, the duty the Center owed to Collins, and its alleged breach, required no expert testimony.

¶ 11 Collins therefore did not need expert testimony to establish the appropriate standard of care and any breach thereof. "In this type of situation, the plaintiff can rely on the common knowledge and understanding of laymen to establish this element." *Nixdorf,* 612 P.2d at 353. Thus, under the applicable law, the Center was not entitled to a directed verdict in its favor. *See Wycalis v. Guardian Title of Utah,* 780 P.2d 821, 825 (Utah Ct.App.1989) (stating that "'[o]rdinarily, whether a defendant has breached the required standard of care is a question of fact for the jury'") (citation omitted).

¶ 12 Having determined that the trial court erred in requiring expert testimony, we need not reach the issue of whether the trial court abused its discretion in not allowing Dr. Mustard's proposed testimony.

## CONCLUSION

¶ 13 The trial court erred in entering a directed verdict based on Collins's inability to present competent expert testimony because expert testimony was unnecessary. Accordingly, we reverse and remand for a new trial.

¶ 14 WE CONCUR: NORMAN H. JACKSON, Judge, and GREGORY K. ORME, Judge.